IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| RICHARD CANNON, *on behalf of herself and all others similarly situated*, Plaintiff, | § § § § § § § § § § | CIVIL ACTION NO.<br><br>**CLASS COMPLAINT**<br>Jury Trial Demanded |
| vs. | | |
| PETER A. KLC AND ASSOCIATES, PLLC DBA PARAMOUNT ACCEPTANCE, Defendant. | | |

## NATURE OF ACTION

1. Plaintiff Richard Cannon ("Plaintiff") brings this action against Defendant Peter A. KLC and Associates, PLLC dba Paramount Acceptance ("Defendant") pursuant to the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 *et seq.*, and the Texas Debt Collection Act ("TDCA"), Chapter 392 Tex. Fin. Code, individually and on behalf of all others similarly situated.

## JURISDICTION, VENUE, AND STANDING

2. This Court has jurisdiction pursuant to 47 U.S.C. § 227(b)(3), 28 U.S.C. § 1331, and 28 U.S.C. § 1367(a).

3. "[A]llegations of nuisance and invasion of privacy in TCPA actions are sufficient to state a concrete injury under Article III." *Hewlett v. Consol. World Travel, Inc.*, 2016 WL 4466536, at *2 (E.D. Cal. Aug. 23, 2016) ("The purpose and history of the TCPA thus suggest that Congress sought to curb the 'aggravation, nuisance, and invasion of privacy' that plaintiff alleges here, which resulted from defendant's alleged use of an ATDS to call plaintiff despite plaintiff's repeated requests for those autodialed calls to stop.").

4. Venue is proper before this Court pursuant to 28 U.S.C. § 1391(b), where the acts and transactions giving rise to Plaintiff's action occurred in this district, where Plaintiff reside in this district, and where Defendant transacts business in this district.

## THE TELEPHONE CONSUMER PROTECTION ACT

5. Congress enacted the TCPA due to widespread concern over the invasion of privacy caused by the proliferation of automatic and prerecorded phone calls. *See Mims v. Arrow Fin. Services, LLC*, 132 S. Ct. 740, 745, 181 L. Ed. 2d 881 (2012).

6. In enacting the TCPA, Congress found that "'unrestricted telemarketing . . . can be an intrusive invasion of privacy.' In particular, Congress reported, 'many consumers are outraged over the proliferation of intrusive nuisance calls to their homes.'" *Id.* (citing S.Rep. No. 102-178, at 4-5, reprinted in 1991 U.S.C.C.A.N. at 1972).

7. The TCPA makes it unlawful for any person "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone service . . . ." 47 U.S.C. § 227(b)(1)(A)(iii).

8. The TCPA gives a private right of action to individuals that allows for both injunctive relief as well as monetary damages. Damages are calculated by the greater of actual damages or $500 for each violation of the statute. 47 U.S.C. § 227(b)(3)(B).

9. Under the TCPA, subscribers of wireless service and customary users of a telephone number, who are called in violation of the TCPA, have standing to bring a TCPA suit. *See Lee v. Loandepot.com, LLC*, 14-CV-01084-EFM, 2016 WL 4382786, at *4 (D. Kan. Aug. 17, 2016); *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 30 F.C.C. Rcd. 7961 (F.C.C. 2015) ("'called party' is best understood to mean the

subscriber to whom the dialed wireless number is assigned because the subscriber is 'charged for the call' and, along with a non-subscriber customary user, is the person whose privacy is interrupted by unwanted calls.").

10. "If the court finds that the Defendant willfully or knowingly violated this subsection" the court may "increase the amount of the award to an amount equal to not more than 3 times the amount available under subparagraph (B) of this paragraph." 47 U.S.C. § 227(b)(3)(C).

## THE TEXAS DEBT COLLECTION ACT

11. In 1973, the Texas State Legislature enacted the Texas Debt Collection Act to "control and curtail the practices used in the collection of debt" which the legislature viewed unethical and harassing to consumers. *See* House Comm. on Judiciary, Bill Analysis, Tex. S.B. 252, 63rd Leg., R.S. (1973).

12. While the TDCA is modeled after the Fair Debt Collection Practices Act, "[t]he TDCA's definition of debt collector is broader than the FDCPA's definition," *Miller v. BAC Home Loans Servicing, L.P.*, 726 F.3d 717, 722 (5th Cir. 2013), and the TDCA "is also intended to encompass creditors collecting their own debts." *Marquez v. Fed. Nat. Mortg. Ass'n*, No. 3:10-CV-02040-L, 2011 WL 3714623, at *4 (N.D. Tex. Aug. 23, 2011).

13. "The TDCA has a two-tiered structure that includes both 'third-party debt collectors' (defined the same as 'debt collectors' under the FDCPA) and 'debt collectors,' which include anyone "who directly or indirectly engages in debt collection." *Davis v. Wells Fargo Bank, N.A.*, 976 F. Supp. 2d 870, 885 (S.D. Tex. 2013) (quoting Tex. Fin. Code § 392.001(6)).

## PARTIES

14. Plaintiff is a natural person who at all relevant times resided in the State of Texas, County of Tarrant, and City of Bedford.

15. Plaintiff is a "consumer" as defined by Tex. Fin. Code § 392.001(1).

16. Defendant is an entity who at all relevant times was engaged, by use of the mails and telephone, in the business of attempting to collect a "consumer debt," as defined by Tex. Fin. Code § 392.001(2).

17. Defendant is a "debt collector" as defined by Tex. Fin. Code § 392.001(6).

## FACTUAL ALLEGATIONS

18. Plaintiff is a natural person allegedly obligated to pay a debt.

19. Plaintiff is subscribed to a cellular telephone service and has been assigned a wireless number in connection with such subscription.

20. Plaintiff's alleged obligation arises from a transaction in which the money, property, insurance, or services that are the subject of the transaction were incurred primarily for personal, family, or household purposes—namely, a personal gym membership (the "Debt").

21. Defendant uses instrumentalities of interstate commerce or the mails in a business the principal purpose of which is the collection of any debts.

22. Defendant regularly collects or attempts to collect, directly or indirectly, debts owed or due, or asserted to be owed or due, another.

23. Defendant provides a turnkey billing solution for gyms and other similar membership-based businesses.

24. These businesses contract with Defendant to process payments on their behalf and collect past due monthly membership payments.

25. One such business that contracts with Defendant is Fitness Now, a gym in Watauga, Texas.

26. On or around November 17, 2017, Plaintiff signed up for a thirty day, no obligation gym membership with Fitness Now.

27. In order to sign up for the membership, Plaintiff was required to provide only a payment card to Fitness Now at the gym location.

28. Plaintiff did not sign any contract associated with his trial membership.

29. Plaintiff cancelled the trial membership on or around the day after he signed up, as he was dissatisfied with the quality of the gym.

30. After he cancelled the trial membership, he began receiving email notifications from Defendant regarding monthly payments that he did not owe.

31. Shortly thereafter, Defendant began placing calls to Plaintiff's wireless telephone number in connection with the collection of the Debt.

32. On multiple occasions, Plaintiff spoke with Defendant and demanded that all calls cease and desist.

33. In addition, he responded to many of Defendant's emails by clearly and unequivocally stating that Defendant needed to stop calling him.

34. To the extent Defendant ever had Plaintiff's prior express consent to place calls to Plaintiff's wireless number, such consent was revoked the first time Plaintiff demanded the calls stop, either by email or by phone.

35. Nevertheless, Defendant continued placing telephone calls to Plaintiff's wireless telephone number.

36. On April 21, 2018, Plaintiff sent Defendant an email stating:

> I've called and told you all to stop contacting me. I've told you dozens of times to cease contact from me and my work already! I've said to stop with any type of correspondence[.]
>
> I'm going to contact a lawyer if you keep it up.

37. When the calls continued, Plaintiff sent Defendant another email on May 2, 2018 stating: "I have told your live reps multiple times to cease contact. Now I'm Emailing you it."

38. Defendant continued placing telephone calls to Plaintiff's wireless telephone number.

39. Defendant placed no less than 52 calls to Plaintiff's wireless telephone number after Plaintiff first demanded such calls cease and desist.

40. Upon information and belief, Defendant made the aforementioned calls to Plaintiff's wireless number using an automated, computerized dialing system ("the Dialing System").

41. During many of the calls, Defendant used the Dialing System to leave a voicemail or broadcasted a message to Plaintiff using an artificial or pre-recorded voice.

42. Upon information and belief, the Dialing System is a combination of hardware and software that has the capacity to store telephone numbers to be called and to dial such numbers in an automated fashion.

43. If Defendant were so inclined, the Dialing System could be used to store large lists of arbitrary telephone numbers and to dial such numbers.

44. Upon information and belief, the Dialing System has the capacity to place a large volume of calls in a short period of time without the need for a human being to make an individualized decision about whether to make each call.

45. Upon information and belief, Defendant uses the Dialing System to call lists of numbers through "dialing campaigns."

46. When the Dialing System calls numbers that are stored in its permanent or temporary memory, it relies on a computerized process to dial numbers either in a random order or in a particular sequence, based on the parameters of the particular dialing campaign that Defendant's collection agents are working at any given time.

47. This computerized process generates telephone numbers to be called from the hardware upon which the Dialing System relies for its permanent or temporary memory (i.e., the hard drive, RAM, or cache) according to certain programmed instructions defined by a particular dialing campaign and then, after this queuing process, the Dialing System dials the number in the phone network.

48. Upon information and belief, the Dialing System attempts to predict the number of calls that will be answered within a certain period of time in the future and places a corresponding number of calls based on the number of Defendant's available agents within that future time frame.

49. Accordingly, the Dialing System is a predictive dialer, as that technology is described in the FCC's 2003 order on the TCPA.

50. Defendant did not place any calls to Plaintiff's wireless number for emergency purposes.

51. Defendant did not have Plaintiff's prior express consent to make any calls to Plaintiff's wireless number.

52. Upon information and belief, Defendant voluntarily placed the calls identified above to Plaintiff's wireless number.

53. Upon information and belief, Defendant placed all calls to Plaintiff's wireless number under its own free will.

54. Upon information and belief, Defendant had knowledge that it was using the Dialing System to place each of the calls identified above.

55. Upon information and belief, Defendant intended to use the Dialing System to place each of the calls identified above.

56. Upon information and belief, Defendant maintains business records that show all calls Defendant placed to Plaintiff's wireless number using the Dialing System, which may reveal the existence of additional violations beyond those pleaded above.

## CLASS ALLEGATIONS

57. Plaintiff repeats and re-alleges all factual allegations above.

58. Upon information and belief, in the four year prior to the filing of this action, Defendant has used the Dialing System to make calls to a large number of consumers within the State of Texas in an attempt to collect debts from them.

59. Upon information and belief, Defendant has called a large number of these consumers on their wireless numbers using the Dialing System without regard to whether it has the called party's consent to do so, because it believes that the Dialing System is not regulated by the TCPA.

60. Upon information and belief, Defendant maintains business records, such as account notes and audio recordings, that reflect when a consumer places a call to Defendant and instructs it to stop calling them or otherwise indicates that Defendant does not have consent to call.

61. Plaintiff brings this action on behalf of himself and all others similarly situated. Specifically, Plaintiff seeks to represent the following classes of individuals as:

**TCPA Class**

All persons in the state of Texas, to whom Defendant—in the four years prior to the filing of the original complaint in this action through the date of class certification—placed a call using the Dialing System to such person's wireless number, after such person informed Defendant that it did not have consent to call them.

**TDCA Class**

All persons in the state of Texas, to whom Defendant—in the two years prior to the filing of the original complaint in this action through the date of class certification—placed a call using the Dialing System to such person's wireless number, in an attempt to collect a consumer debt, after such person informed Defendant that it did not have consent to call them.

62. The proposed classes specifically exclude the United States of America, the State of Texas, counsel for the parties, the presiding United States District Court Judge, the Judges of the United States Court of Appeals for the Fifth Circuit, the Justices of the United States Supreme Court, all officers and agents of Defendant, and all persons related to within the third degree of consanguinity or affection to any of the foregoing persons.

63. The classes are averred to be so numerous that joinder of members is impracticable.

64. The exact number of class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery.

65. The classes are ascertainable in that the wireless numbers of all class members are contained within business records maintained by Defendant, and class members' names and/or addresses can be identified from the wireless carriers that provide service for the wireless numbers of the class members.

66. There exists a well-defined community of interest in the questions of law and fact involved that affect the parties to be represented. These common questions of law and fact predominate over questions that may affect individual class members. Such issues include, but are not limited to: (a) the existence of Defendant's identical conduct particular to the matters at issue; (b) Defendant's violations of the TCPA and TDCA; (c) the availability of injunctive relief for the TCPA and TDCA classes; (d) the availability of statutory penalties for the TCPA class; (e) the availability of actual damages for the TDCA class; and (f) attorney's fees and costs.

67. Plaintiff's claims are typical of the claims of the classes he seeks to represent.

68. The claims of Plaintiff and of the classes originate from the same conduct, practice, and procedure on the part of Defendant. Thus, if brought and prosecuted individually, the claims of each class member would require proof of the same material and substantive facts.

69. Plaintiff possesses the same interests and has suffered the same injuries as each class member. Plaintiff asserts identical claims and seeks identical relief on behalf of the unnamed class members.

70. Plaintiff will fairly and adequately protect the interests of the classes and has no interest adverse to or which directly and irrevocably conflicts with the interests of other class members. Plaintiff is willing and prepared to serve this Court and the proposed classes. The interests of Plaintiff are co-extensive with and not antagonistic to those of the absent class members.

71. Plaintiff has retained the services of counsel who are experienced in consumer protection claims, as well as complex class action litigation, will adequately prosecute this action, and will assert, protect and otherwise represent Plaintiff and all absent class members.

72. Class certification is appropriate under Fed. R. Civ. P. 23(b)(1)(A) and 23(b)(1)(B). The prosecution of separate actions by individual members of the classes would, as a practical matter, be dispositive of the interests of other members of the classes who are not parties to the action or could substantially impair or impede their ability to protect their interests.

73. The prosecution of separate actions by individual members of the classes would create a risk of inconsistent or varying adjudications with respect to individual members of the classes, which would establish incompatible standards of conduct for the parties opposing the classes. Such incompatible standards of conduct and varying adjudications, on what would necessarily be the same essential facts, proofs and legal theories, would also create and allow the existence of inconsistent and incompatible rights within the classes.

74. Class certification is appropriate under Fed. R. Civ. P. 23(b)(2) in that Defendant has acted or refused to act on grounds generally applicable to the classes, making final declaratory or injunctive relief appropriate.

75. Class certification is appropriate under Fed. R. Civ. P. 23(b)(3) in that the questions of law and fact that are common to members of the classes predominate over any questions affecting only individual members.

76. Moreover, a class action is superior to other methods for the fair and efficient adjudication of the controversies raised in this Complaint in that: (a) individual claims by the class members will be impracticable as the costs of pursuit would far exceed what any one plaintiff or class member has at stake; (b) as a result, very little litigation has been commenced over the controversies alleged in this Complaint and individual members are unlikely to have an interest in prosecuting and controlling separate individual actions; and (c) the concentration of litigation of these claims in one forum will achieve efficiency and promote judicial economy.

## COUNT I
## VIOLATION OF 47 U.S.C. § 227(b)(1)(A)(iii)

77. Plaintiff repeats and re-alleges each and every factual allegation above.

78. Defendant violated 47 U.S.C. § 227(b)(1)(A)(iii) by willfully and knowingly placing telephone calls to Plaintiff's wireless number using the Dialing System after Plaintiff told Defendant to stop calling him.

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

a) Certifying the TCPA class under Fed. R. Civ. P. 23, naming Plaintiff and his counsel as representatives of the class, and designating this Complaint as the operable complaint for class purposes;

b) Adjudging that Defendant violated 47 U.S.C. § 227(b)(1)(A)(iii) with respect to Plaintiff and the class he seeks to represent;

c) Enjoining Defendant from placing any further telephone calls to Plaintiff and the class in violation of the TCPA, pursuant to 47 U.S.C. § 227(b)(3)(A);

d) Awarding Plaintiff and the class he seeks to represent statutory damages in the amount of $500.00 per violation, pursuant to 47 U.S.C. § 227(b)(3)(B);

e) Awarding Plaintiff and the class he seeks to represent actual damages, pursuant to 47 U.S.C. § 227(b)(3)(B);

f) Awarding Plaintiff and the class he seeks to represent treble damages, pursuant to 47 U.S.C. § 227(b)(3);

g) Awarding Plaintiff and the class he seeks to represent reasonable attorneys' fees and costs incurred in this action;

h) Awarding Plaintiff and the class he seeks to represent pre-judgment and post-judgment interest as permissible by law; and

i) Awarding such other and further relief as the Court may deem just and proper.

## COUNT II
## TEX. FIN. CODE § 392.302(4)

79. Plaintiff repeats and re-alleges each and every factual allegation above.

80. Defendant violated Tex. Fin. Code § 392.302(4) by causing a telephone to ring repeatedly or continuously, or making repeated or continuous telephone calls, with the intent to harass a person at the called number.

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

a) Certifying the TDCA class under Fed. R. Civ. P. 23, naming Plaintiff and his counsel as representatives of the class, and designating this Complaint as the operable complaint for class purposes;

b) Adjudging that Defendant violated Tex. Fin. Code § 392.302(4) with respect to Plaintiff and the class he seeks to represent;

c) Awarding Plaintiff injunctive relief, and the class she seeks to represent, pursuant to Tex. Fin. Code § 392.403(a)(1);

d) Awarding Plaintiff, and the class he seeks to represent, actual damages pursuant to Tex. Fin. Code § 392.403(a)(2);

e) Awarding Plaintiff reasonable attorneys' fees and costs incurred in this action, pursuant to Tex. Fin. Code § 392.403(b);

f) Awarding Plaintiff, and the class he seeks to represent, any pre-judgment and post-judgment interest as permissible by the law; and

g) Awarding such other and further relief as the Court may deem just and proper.

## TRIAL BY JURY

81. Plaintiff is entitled to and hereby demands a trial by jury.

Dated: August 15, 2018

                                           Respectfully submitted,

                                           _/s/ R.S. Thompson_

                                           Russell S. Thompson IV
                                           Thompson Consumer Law Group, PLLC
                                           5235 E. Southern Ave. D106-618
                                           Mesa, AZ 85206
                                           Telephone:   602-388-8898
                                           Facsimile:    866-317-2674
                                           rthompson@ThompsonConsumerLaw.com

                                           **Attorney for Plaintiff**